**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DOUGLAS DWAYNE MILLER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 10-CV-469-TCK-FHM |
| | ) |
| JIM FARRIS, Warden. | ) |
| | ) |
| Respondent. | ) |

**OPINION AND ORDER**

This is a 28 U.S.C. § 2254 habeas corpus action. Petitioner Douglas Dwayne Miller, a state prisoner appearing *pro se*, filed his petition (Dkt. # 1) on May 26, 2010, in the United States District Court for the Western District of Oklahoma. On July 21, 2010, the case was transferred to this District Court (Dkt. # 9). Respondent filed a response to the petition (Dkt. # 14) on August 26, 2010, and provided the state court record necessary for resolution of Petitioner's claims (Dkt. ## 14, 15, 16). On September 13, 2010 Petitioner filed a reply (Dkt. # 17). On March 23, 2012, he filed a supplemental reply (Dkt. # 23). For the reasons discussed below, the petition for writ of habeas corpus shall be denied.

*BACKGROUND*

Pursuant to 28 U.S.C. § 2254(e)(1), the historical facts found by the state court are presumed correct. The Oklahoma Court of Criminal Appeals (OCCA) provided an extensive summary of the facts in its unpublished direct appeal opinion. Following review of the record, trial transcripts, and other materials submitted by the parties, the Court finds the factual summary by the OCCA is adequate and accurate. Therefore, the Court adopts the following summary as its own.

In the early morning hours of April 15, 2006, Appellant and his girl friend, Shawna Dicus, went to a house in Tulsa that was occupied by Danny Carter, Alisia Pena and Cody Poleszac.[1] At the house, everyone went to Poleszac's room to look at a gun Poleszac wanted to sell. Appellant and Dicus were interested in purchasing the gun but did not have money. They offered to give Poleszac some drugs for the gun and Dicus started weighing out marijuana on a scale that was in the room. Poleszac protested that he did not want drugs because he needed cash but there was no argument or fighting. During the discussion, Pena took the gun from Appellant, who had been holding it, and attempted to take it out of the room to put it away. As she walked by Appellant, he grabbed the gun, looked at both sides of it, and shot Carter in the head. Appellant then pointed the gun at Poleszac and shot him in the head. Pena covered her head and fell to the ground. Appellant and Dicus left the room. When Pena heard the front door slam, she got up to find the phone and call 911. Because Pena did not know the address at which the house was located, she had to go outside to look. When she was outside, she saw that Appellant and Dicus were still there. Dicus was yelling at Appellant to get into the car and he said, "I have to finish her." He did not want to leave a witness to the crime. When Dicus told Appellant that she would leave him, he finally got inside the car and they left.

After they left, Dicus and Appellant drove around for a while and finally parked the car behind a Holiday Inn Select. They left the car and started walking aimlessly until they came upon a red Mustang parked in a parking lot at 46th Street and Memorial. They approached the vehicle, which was occupied by nineteen year old Aaron Rexwinkle, and asked for a ride to an apartment complex at 61st and Memorial. Rexwinkle agreed, and Dicus got into the back seat while Appellant sat in the front passenger seat. When they arrived at the parking lot of the apartment complex, Rexwinkle parked the car. Both Appellant and Dicus got out of the car and then Appellant got back in. Appellant put his gun on the seat and told Dicus that Rexwinkle was getting carjacked. Appellant knocked the cell phone out of Rexwinkle's hand and began hitting him in the head with the gun. During the struggle, Rexwinkle heard two gun clicks and then a shot was fired. Rexwinkle got out of the car and told Appellant and Dicus that they could have the car. Dicus went to [Rexwinkle], held a knife to his throat and demanded the car keys. Appellant wanted to put Rexwinkle in the trunk of the car but Dicus talked him out of it. As they drove away, Appellant fired another shot at Rexwinkle.

Appellant and Dicus drove Rexwinkle's car to Appellant's aunt's house in Sand Springs. Once there, Appellant told Dicus to go clean up as she had blood on her face. While she was cleaning up, Appellant took the Mustang and drove it into

---

[1] Although the OCCA consistently spelled this victim's last name as "Poleszac," the transcript of his trial testimony reflects that his last name is spelled "Poleszak." See Dkt. # 16-1, Tr. Trans. Vol I at 197.

>a ditch somewhere. When he came back to the house, Appellant's aunt gave them a ride and they eventually ended up at Dicus's apartment. Appellant left a short time later to go get drugs. As soon as he was gone, Dicus called her cousin to come pick her up and she went to the police station to report what had happened.
>
>Between 8:00 and 9:00 p.m. on April 15, Appellant was approached by a police officer in Owasso. The officer identified himself and commanded Appellant, at gun point, to get on the ground. Appellant jogged a couple of steps before he followed the officer's command and surrendered. Appellant was arrested at this time and was still in possession of the gun used in the earlier assaults.

(Dkt. # 14, Ex. 3). Danny Carter died as a result of a gunshot wound to the head. Cody Poleszak survived the shooting.

As a result of those events Petitioner was charged by Information with Murder in the First Degree (Count I), Shooting with Intent to Kill (Count II), Robbery with a Firearm (Count III), Shooting with Intent to Kill (Count IV), Assault and Battery with a Dangerous Weapon (Count V), and Possession of a Firearm, After Former Conviction of a Felony (Count VI), in Tulsa County District Court Case No. CF-2006-1976. A seventh count of Use of a Vehicle to Facilitate the Discharge of a Firearm (Count VII) was added at the preliminary hearing held on May 26, 2006. This count was later added to an amended Information filed on September 18, 2006.

All seven counts were tried before a jury at a trial which began February 11, 2008. After being found guilty on all seven counts, the jury recommended a sentence of life without parole on Count I. Petitioner agreed to permit the court to sentence him on the remaining six counts. On February 14, 2008, the trial court sentenced Petitioner to life without parole on Count I, in accordance with the jury's recommendation. The court also sentenced him to twenty (20) years on each of the remaining six counts, each to run consecutively to the others. Petitioner was represented at trial by attorney J. Brian Rayl.

Petitioner appealed his convictions to the Oklahoma Court of Criminal Appeals (OCCA). Represented by attorney Stuart Southerland, he raised the following eight (8) propositions of error:

| | |
|---|---|
| Proposition One: | It was error to refuse Appellant's request to instruct the jury on second degree murder. The failure of the district court to properly instruct the jury constitutes a violation of the provisions of both Oklahoma statutory law and the Fourteenth Amendment to the United States Constitution. |
| Proposition Two: | It was error to fail to instruct the jury on the lesser-included offense of assault with a dangerous weapon in Count II. |
| Proposition Three: | It was error for the preliminary hearing magistrate to bind Appellant over on the felony charge of use of vehicle to facilitate discharge of a firearm, an offense which the State did not accuse Appellant of committing. |
| Proposition Four: | It was reversible error to deny Appellant's motion to sever the counts against him into two separate trials. |
| Proposition Five: | It was error to present evidence of the nature and extent of the injuries to Cody Poleszak. |
| Proposition Six: | The prosecutor used evidence of Appellant's "prior bad acts" to argue to the jury that he had a "criminal mind" which increased the likelihood that he was guilty of the charged offenses. The actions of the prosecutor constituted misconduct and served to deny Appellant the right to a fair trial pursuant to the Fourteenth Amendment to the United States Constitution. |
| Proposition Seven: | Appellant received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution. |
| Proposition Eight: | The accumulation of error in this case deprived Appellant of due process of law and a fair trial, therefore necessitating reversal pursuant to the Fourteenth Amendment to the United States Constitution. |

(Dkt. # 14, Ex. 1). In an unpublished summary opinion, filed March 26, 2009, in Case No. F-2008-190 (Dkt. # 14, Ex.3), the OCCA rejected the direct appeal claims, and affirmed the judgment and

sentence of the trial court. Petitioner did not file an application for post-conviction relief, nor did he seek certiorari review from the United States Supreme Court.

On May 26, 2010, Petitioner filed his federal petition for writ of habeas corpus (Dkt. #1). He raised the following grounds of error:

| | |
|---|---|
| Ground One: | Conviction obtained due to failure to instruct jury of 2nd degree murder instructions, a 14th Amendment violation. |
| Ground Two: | Denial of Effective assistance of council [sic] violation of the 6th and 14th Amendment. |
| Ground Three: | Prosecutorial misconduct which denied petitioner a fair trial pursuant to the 14th Amendment of the Constitution. |
| Ground Four: | Trial Judge abandoned neutral and detached position and suggested to the prosecutor a new charge. |
| Ground Five: | It was reversible error to deny Appellant's motion to sever to [sic] counts against him into two separate trials an [sic] violation of the 5th and 14th Amendments of the United States Constitution. |

(Dkt. # 1). In response, Respondent asserts that Petitioner's claims are not cognizable in this habeas proceeding, or do not justify habeas relief under 28 U.S.C. § 2254(d).  See Dkt. # 14.

*ANALYSIS*

**A.      Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b), (c).  See Rose v. Lundy, 455 U.S. 509, 510 (1982). Petitioner fairly presented the substance of his claims to the OCCA on direct appeal.  Therefore, the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied.

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing.  See Williams v. Taylor, 529 U.S. 420 (2000).

**B.     Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**1. Failure to instruct on lesser included offense (ground 1)**

As his first ground of error, Petitioner complains that he was denied a fair trial when the trial court failed to instruct on the lesser included offense of Second Degree Murder (Dkt. # 1 at 5). The OCCA rejected this claim, as follows:

> Appellant argues that an instruction on this lesser offense was warranted in light of the evidence that he had used methamphetamine that day, and his testimony that he felt threatened by Carter and Poleszac and did not intend to shoot anyone. However, in light of the testimony of three other witnesses to the shooting and the evidence showing that both victims were shot in the head at close range, we find the evidence did not reasonably support the conclusion that Appellant did not intend to kill any

> particular individual. An instruction on Second Degree Depraved Mind Murder was not warranted by the evidence and the trial court did not abuse its discretion in denying this instruction.

(Dkt. # 14, Ex. 3).

Petitioner's case was a non-capital case. Tenth Circuit precedent establishes a rule of "automatic non-reviewability" for claims based on a state court's failure, in a non-capital case, to give a lesser included offense instruction. Dockins v. Hines, 374 F.3d 935, 938 (10th Cir. 2004) (stating that neither the Tenth Circuit nor the United States Supreme Court has ever recognized a federal constitutional right to a lesser included offense instruction in non-capital cases). For that reason, Petitioner is not entitled to habeas relief on his claim challenging the trial court's failure to instruct on the lesser included offense of Second Degree Murder.

**2. Prosecutorial misconduct (ground 3)**

In his third ground, Petitioner contends that his Fourteenth Amendment right to a fair trial was violated due to prosecutorial misconduct. In particular, he complains that the prosecutor: (1) used evidence of his prior bad acts to suggest that he had a "criminal mind," (2) improperly presented evidence of a jail incident where he attacked another inmate, (3) improperly offered his opinion of Petitioner's guilt, and (4) made several improper arguments during his closing statement. See Dkt. # 1 at 6-7. Because the comments were not objected to by trial counsel, the OCCA reviewed for plain error only. In rejecting the claim, the OCCA found as follows:

> The alleged instances of misconduct include allegations that the prosecutor improperly cross examined Appellant about his prior convictions and about the incident where he assaulted another inmate in the county jail. Appellant also asserts that prosecutor improperly expressed his opinion as to Appellant's guilt during closing argument and made other improper remarks about punishment. Many of these comments, including the single comment met with objection, fell within the broad parameters of effective advocacy and do not constitute error. *Martinez v. State*, 1999 OK CR 33, ¶ 44, 984 P.2d 813, 825. We review these comments bordering

7

> upon impropriety within the context of the entire trial, considering not only the propriety of the prosecutor's actions, but also the strength of the evidence against the defendant and the corresponding arguments of defense counsel. *DeRosa v. State*, 2004 OK CR 19, ¶ 53, 89 P.3d 1124, 1145. Given the magnitude of the State's evidence against Appellant this Court can find that any inappropriate comments not objected to did not deprive Appellant of a fair trial or affect the jury's finding of guilt or assessment of punishment. There was no plain error here.

(Dkt. # 14, Ex. 3).

Where prosecutorial misconduct does not implicate a specific constitutional right, improper remarks require reversal of a state conviction only if the remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). To determine whether a trial is rendered fundamentally unfair, we examine the entire proceeding, "including the strength of the evidence against the petitioner, both as to guilt at that stage of the trial and as to moral culpability at the sentencing phase" as well as "[a]ny cautionary steps-such as instructions to the jury-offered by the court to counteract improper remarks." Le v. Mullin, 311 F.3d 1002, 1013 (10th Cir. 2002). "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks omitted). The ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutors' conduct. Bland v. Sirmons, 459 F.3d 999, 1024 (10th Cir. 2006). "To view the prosecutor's [conduct] in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's [conduct] plausibly could have tipped the scales in favor of the prosecution." Fero v. Kerby, 39 F.3d 1462, 1474 (10th Cir. 1994) (quotations omitted); see also Smallwood v. Gibson, 191 F.3d 1257, 1275-76 (10th Cir. 1999).

The Court agrees with the OCCA that, in light of all the evidence presented at trial,[2] even if the prosecutor's comments were improper, Petitioner has failed to show that they were significant enough to influence the jury's decision. See Moore v. Reynolds, 153 F.3d 1086, 1113 (10th Cir. 1998). As a result, Petitioner has failed to demonstrate a reasonable probability that the outcome of his trial would have been different without the alleged misconduct. See Hoxsie v. Kerby, 108 F.3d 1239, 1244-45 (10th Cir. 1997). Upon review of the trial transcript, this Court finds that the OCCA's rejection of this claim was not an unreasonable application of constitutional law. Petitioner is not entitled to habeas corpus relief on his ground three claim.

### 3. Preliminary hearing judge exceeded his authority (ground 4)

In his fourth ground for relief, Petitioner claims that, after hearing evidence, the preliminary hearing judge improperly suggested to the district attorney that a new charge be added. At issue is the following colloquy which occurred toward the end of the May 26, 2006, preliminary hearing before Special Judge Allen Klein:

| | |
|---|---|
| JUDGE: | Is the State going to request to add another count, use of a vehicle to facilitate the discharge of a firearm? |
| DEFENSE COUNSEL: | I object, Your Honor. |
| JUDGE: | Object to what? The testimony indicates that there is an offense. If Mr. Musseman chooses not to pursue it, I would just like to suggest that he consider it. |
| DEFENSE COUNSEL: | That's awfully nice of you, Your Honor. I would like for you not to suggest that. |
| JUDGE: | Obviously I can bind over on any offense that I hear evidence about. If he chooses not to do that, that's his decision. I'm not |

---

[2]   The evidence against Petitioner was overwhelming and included the testimony of the victims and eyewitnesses to the events giving rise to the criminal charges.

|  |  |
|---|---|
|  | going to do it. But I was just suggesting it. If he doesn't want to do that, that's fine.<br>State's resting then? |
| PROSECUTOR: | Well, Your Honor, I would ask the Court to consider the evidence. If the Court, after hearing the evidence, believes that there is sufficient evidence to bind over on the use of a vehicle to facilitate, I would ask the Court to bind over on all the charges it believes it's heard sufficient evidence to bind over on. |
| DEFENSE COUNSEL: | Objection, Your Honor. He rested, then you suggested that. |
| JUDGE: | I will add it and set bond at five thousand. |

(Dkt. # 15, Prel. Hr'g Trans. dated 5/26/2006, at 83-84). Rejecting this claim on direct appeal, the OCCA found "no indication that the magistrate judge overstepped the bounds of his authority." See Dkt. # 14, Ex. 3.

It does not appear that Petitioner's claim that the preliminary hearing judge "abandoned [his] neutral and detached position" raises a colorable federal issue. To the extent the OCCA's decision was based on an interpretation of state law, this Court is bound to accept the OCCA's interpretation of the judge's authority. A federal habeas court has no authority to review a state court's interpretation or application of its own state laws. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (emphasizing that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions); see also Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (citing McGuire and noting that, "[w]e have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"). Instead, when conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. McGuire, 502 U.S. at 68; 28 U.S.C. § 2241.

To the extent Petitioner claims his due process rights were violated, he provides no authority to support his claim that the preliminary judge's suggestion resulted in an unfair trial. Judge Klein did not preside over Petitioner's trial. Based on the evidence presented at trial, a jury found Petitioner guilty of the crime of Use of a Vehicle to Facilitate the Discharge of a Firearm (Count VII). See Dkt. # 16-3, Tr. Trans. Vol. III at 494. Petitioner has failed to demonstrate that the OCCA's decision was contrary to, or involved an unreasonable application of Supreme Court law, or was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). He is not entitled to habeas relief on his fourth ground for relief.

### 4. Failure to sever counts (ground 5)

Prior to trial, Petitioner's counsel filed a motion to sever Counts I and II from the remaining counts. See Dkt. # 14, Ex. 1 at 23. The trial court denied the motion. Id. Petitioner contends in ground five that it was reversible error for the trial court to deny the request for severance. See Dkt. # 1 at 9. Addressing the issue on direct appeal, the OCCA denied relief, holding that the crimes were "logically tried together without unfairly prejudicing" Petitioner. See Dkt. # 14, Ex. 3 at 8.

To obtain habeas relief based on his misjoinder claim, Petitioner must demonstrate that the OCCA's rejection of the claim was contrary to, or an unreasonable application of, controlling Supreme Court precedent. The controlling Supreme Court case on this issue is United States v. Lane, 474 U.S. 438 (1986). In Lane, the Supreme Court held that "[i]mproper joinder does not, in itself, violate the Constitution." Id. at 446 n.8. "Rather," the Court indicated, "misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." Id. Following the standard set forth in Lane, the Tenth Circuit has held that, "to obtain [federal] habeas relief" based on a claim of misjoinder, the "petitioner must

11

show the joinder of offenses actually render[ed] petitioner's state trial fundamentally unfair and hence, violative of due process." Cummings v. Sirmons, 506 F.3d 1211, 1239 (10th Cir. 2007) (quoting Lucero v. Kerby, 133 F.3d 1299, 1314 (10th Cir. 1998)).

In Petitioner's case, the OCCA concluded that the crimes were all similar in that they were committed with the gun that Petitioner took from Poleszak, they were committed within a few hours of each other, and within a relatively short distance of each other. See Dkt. # 14, Ex. 3 at 8. Further, the offenses committed after the initial assaults on Carter and Poleszak were "sufficiently related as they were a series of criminal acts committed as Appellant attempted to escape the scene of the initial crimes and avoid detection." Id. Upon review of the record, the Court concludes that the OCCA's rejection of this claim was neither contrary to, nor an unreasonable application of, Supreme Court law as set forth in Lane. Habeas relief shall be denied on Petitioner's ground five claim.

**5. Ineffective assistance of counsel (ground 2)**

In ground two, Petitioner claims that his trial counsel was ineffective because he: (1) failed to object to crucial testimony by "a doctor," (2) failed to object to instances of alleged prosecutorial misconduct, and (3) failed to request an instruction on the lesser included offense of Assault With a Dangerous Weapon as to the crime charged in Count II. The OCCA rejected each of these claims on direct appeal. Citing Strickland v. Washington, 466 U.S. 668, 694 (1984), the OCCA found that trial counsel was not constitutionally ineffective for any of these alleged failures. See Dkt. # 14, Ex. 3 at 11.

To be entitled to habeas corpus relief on his claim of ineffective assistance of counsel, Petitioner must demonstrate that the OCCA's adjudication of this claim was an unreasonable application of Strickland. Under Strickland, a defendant must show that his counsel's performance

12

was deficient and that the deficient performance was prejudicial. Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). A federal habeas court may intercede only if the petitioner can overcome the "doubly deferential" hurdle resulting from application of the standards imposed by § 2254(d) and Strickland. Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011). If Petitioner is unable to show either "deficient performance" or "sufficient prejudice," his claim of ineffective assistance fails. Strickland, 466 U.S. at 700. Thus, it is not always necessary to address both Strickland prongs.

First, Petitioner contends that his trial counsel was constitutionally ineffective for failing to object to crucial testimony given by a doctor. Because Petitioner does not identify the doctor or the "crucial testimony," it is necessary to review his direct appeal brief to ascertain exactly what he is

arguing. On direct appeal, Petitioner argued that Dr. Timothy Hepnar, a general surgeon at St. John's Medical Center should not have been permitted to testify about the severe injuries suffered by surviving victim, Cody Poleszak. See Dkt. # 14, Ex. 1 at 30. He claimed that the testimony was irrelevant and cumulative. The OCCA rejected the claim on direct appeal, holding as follows:

> The record reveals that State's witness, Dr. Timothy Hepner, testified that he treated Poleszac for the gunshot wound to his head. Dr. Hepner testified specifically about the exact location of the wound and the damage that was caused by the gunshot. Appellant argues on appeal that this testimony was irrelevant and should not have been admitted. In support of this argument, Appellant cites to an unpublished opinion of this Court wherein we held that such evidence was irrelevant where the defendant was charged with assault and battery. Such is not the case here. In the present case, the Appellant was charged with Shooting with Intent to Kill and the location and extent of the injuries to the victim were relevant to prove the element of intent to kill. Appellant also argues that even if relevant, the probative value of this cumulative evidence was substantially outweighed by the danger of unfair prejudice. 12 O.S. Supp. 2003, § 2403. We do not agree. The evidence at issue was relevant and not unfairly prejudicial.

(Dkt. # 14, Ex. 3 at 9). The OCCA found that because Dr. Hepner's testimony was properly admitted, his trial counsel was not deficient for failing to object to admissible evidence. Id. at 11. Petitioner has failed to convince the Court that the OCCA's ruling was an unreasonable application of Strickland. Accordingly, he is not entitled to relief on this first part of his ineffective assistance of counsel claim.

Petitioner next asserts that his counsel was constitutionally ineffective because he failed to object to "prosecutorial misconduct." See Dkt. # 1 at 5. The Court determined in Section B(2) above, that the prosecutor's conduct did not deprive Petitioner of a fair trial. As a result, Petitioner cannot satisfy the prejudice prong of the Strickland standard.

Lastly, Petitioner claims that he received ineffective assistance of counsel when his attorney failed to request an instruction on the lesser included offense of Assault With a Dangerous Weapon

14

as to the crime charged in Count II, Shooting With Intent to Kill. On direct appeal, Petitioner argued that the trial court should have instructed the jury on the crime of Assault With a Dangerous Weapon since that crime includes the element of intent to do bodily harm but does not require an intent to kill. See Dkt. # 14, Ex. 1 at 18-20. The OCCA rejected that claim, finding that an instruction on Assault With a Dangerous Weapon was not warranted by the evidence. See Dkt. # 14, Ex. 3 at 5-6. This Court agrees that, in light of the evidence presented at trial, an instruction on the lesser included offense of Assault With a Dangerous Weapon was not warranted by the evidence. Therefore, defense counsel did not perform deficiently in failing to request the instruction and Petitioner cannot satisfy the Strickland standard.

Having failed to demonstrate that the OCCA's rejection of his ineffective assistance of counsel claims was an unreasonable application of Strickland, the Court concludes that Petitioner is not entitled to habeas relief on his ground two claims.

### C. Certificate of appealability

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

The Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA was debatable amongst jurists of reason. See Dockins, 374 F.3d at 938. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

### *CONCLUSION*

After careful review of the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, his petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that** the petition for writ of habeas corpus (Dkt. # 1) is **denied**. A separate judgment shall be entered in this matter. A certificate of appealability is **denied**.

**DATED** this 15th day of May, 2013.

*[signature: Terence Kern]*
**TERENCE KERN**
**United States District Judge**